UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES MALY,                          )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )        Case No. 4:11CV00675 AGF
                                     )
TRUSTEES OF LOCAL 309                )
WIREMAN'S PENSION TRUST, et al.,     )
                                     )
            Defendants.              )

## MEMORANDUM AND ORDER

This is an action under Section 502(a)(1)(B) of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. §1132(a)(1)(B), for judicial review of a decision by

the Defendants, Trustees of the ERISA-governed Local 309 Wireman's Pension Trust

("Trustees"), to deny Plaintiff James Maly's claim for retroactive payment of disability

benefits.[1]  Presently before the Court are the parties' cross motions for summary

judgment.  For the reasons set forth below, the Court will deny Plaintiff's motion for

summary judgment and grant Defendant's motion for summary judgment.

## Background

Plaintiff participated in the Local 309 Wireman's Pension Trust ("Pension Plan")

administered by the Trustees in accordance with the Trust Agreement ("Trust") (Doc. No.

19-2), the Restated Plan Document ("Plan") (Doc. No. 1-1), and the Summary Plan

Description ("SPD") (Doc. No. 20-1) (collectively, the "Pension Plan Documents").

---

[1]    The Trustees granted Plaintiff's claim for disability benefits commencing September
1, 2009.  Those benefits are not at issue here.

Plaintiff submitted a claim for retroactive disability benefits, and a designated committee of the Trustees denied the claim. Plaintiff appealed that decision to the full Board of Trustees, which denied the request on the grounds that the provisions of the SPD and the Plan preclude a retroactive grant of disability benefits. Thereafter, Plaintiff filed a request for reconsideration of the decision. The Trustees denied his request and Plaintiff sought judicial review before this Court.

In this action, Plaintiff requested the production of records relating to disability claims made in the last ten years, and sought to supplement the Administrative Record with materials from his workers' compensation file and his Social Security disability file. The Court denied that request and the matter is now before the Court on the parties' briefs and the Administrative Record.

**Facts**

The record establishes the following facts, which are undisputed, unless otherwise noted.

The Pension Plan is a jointly administered, multi-employer pension plan, within the meaning of ERISA, 29 U.S.C. §§ 1002(2) and (37), and established by Local 309, International Brotherhood of Electrical Workers, AFL-CIO ("Local 309") and Southwestern Illinois Division, Illinois Chapter, National Electrical Contractors Association, Inc. ("Division"). The Trustees control and manage the operation and administration of the Pension Plan. Of the six Trustees, three are appointed by Local 309 and three are appointed by the Division. Zenith Administrators ("Zenith"), acts as the

contract administrator of the Plan on behalf of the Trustees and handles the day-to-day operation of the Pension Plan.

In early 2004, Plaintiff, a member of Local 309 and a "Vested Participant" as defined by the Plan, had surgery for bilateral carpal tunnel syndrome, and filed a workers' compensation claim for injuries sustained in the course of his employment.[2] In January 2005, Plaintiff had a second surgery, a cervical spine diskectomy and fusion. Plaintiff received workers' compensation benefits for over two years, and at the end of that period, he received a lump sum disability payment. On May 6, 2006, Plaintiff's employer terminated him because he was physically unable to return to work. Plaintiff filed a request for disability benefits with the Social Security Administration ("SSA") in November of 2007. Around this same time, Plaintiff asked his union agent about disability benefits and whether he should retire. He contends that the union agent advised him to wait for the resolution of his Social Security disability claim before applying for disability pension benefits.

In or around January 2008, Plaintiff contacted Zenith regarding available benefits. Plaintiff asserts that Zenith advised him that he would need to qualify for Social Security disability before he could make an application for disability benefits under the Plan. On August 4, 2009, Plaintiff received a determination from the SSA, finding him disabled and assigning him a disability onset date of April 30, 2004.

---

[2] Section 2.2 of the Plan states that "a Participant shall become a Vested Participant in the Plan when he has completed three Years of Service." It is undisputed that Plaintiff, employed since 1982 by Midwest Sunray, a participating employer, was a Vested Participant under the Pension Plan.

Thereafter, on August 17, 2009, Plaintiff submitted to the Trustees a claim for "Disability Pension Benefits," as defined in the Plan, requesting that April 30, 2004, his Social Security disability onset date, also serve as the effective date for his Disability Pension Benefits. On January 7, 2010, Zenith sent Plaintiff a letter asking him to provide additional information from Social Security in support of his April 30, 2004 disability date. A copy of the Pension Plan's Disability Claims and Appeal Procedures was attached to the January 7, 2010 letter.

On February 24, 2010, Zenith sent Plaintiff a letter confirming receipt, on January 25, 2010, of a letter from the SSA that verified Plaintiff's April 30, 2004 disability date, and requesting a 30-day extension for resolution of his claim. On March 22, 2010, Zenith sent a letter to Plaintiff requesting a second 30-day extension for resolution of his claim. On March 30, 2010, Zenith notified Plaintiff that his application for Disability Pension Benefits had been approved by the Disability Committee of the Trustees with an effective date of September 1, 2009. On May 4, 2010, Zenith notified Plaintiff that the Disability Committee had denied his request for retroactive Disability Pension Benefits for the period from April 1, 2004 through September 1, 2009 under Section 9.1 of the SPD.[3] A

_____

[3]    Section 9.1 of the SPD, which appears under **ARTICLE IX.  Applying for Benefits**, provides:

> **Section 9.1 How Do I Apply For Benefits?**  You must file an application with the Plan Office. The Board of Trustees may for good cause excuse an untimely application, but *in no event will a pension be payable for any period preceding the date of filing the application for retirement* (except as required by IRS Regulations). (emphasis supplied).

copy of the Pension Plan's Disability Claims and Appeal Procedures was attached to the May 4, 2010 letter.

On June 22, 2010, Plaintiff filed an appeal to the full Board of Trustees. In his appeal, Plaintiff stated in pertinent part:

> I worked at Midwest Sunray from 1982 until I was hurt in Oct. 2003. . . . After working with work comp [sic] it was suggested by my attorney in Nov. 28, 2007 to file for disability which I did. After a long period of time . . . the judge awarded me back pay to April 2004. . . .
>
> I did not file for any of my pensions at that [sic] time of the accident because I was hoping to get better and return to work. I did not file for them also because I was told the only way I could get it early was to be declared disabled.
>
> Once the judge declared me disabled as of 2004 . . . I thought I would be eligible for my pensions and back pay. . . . I have been awarded back pay on all [other benefits] except this program.

Doc. No. 34 at ¶ 23.

On July 13, 2010, Zenith sent Plaintiff a letter confirming receipt of his appeal, informing him that his appeal would be considered at the August 9, 2010 Trustees' meeting, and requesting a 45-day extension to consider the appeal. A copy of the Pension Plan's Disability Claims and Appeal Procedures was attached to the July 13, 2010 letter. On August 9, 2010, Plaintiff presented his appeal to the Trustees. As provided under the Plan's Disability Claims Procedures, the Board Chairman and Secretary took no part in the decision regarding Plaintiff's appeal. The minutes of the Trustees' August 9, 2010 meeting provide as follows:

> Mr. Maly described in detail his actions related to applying for disability benefits from both the Local 309 Pension Plan and the NEBF (which had granted him a retroactive disability pension). . . Mr. Maly stated that he had received workers compensation benefits

for over a two-year period and at the end of that period he had also received a permanent settlement for his disability. After receiving these payments, Mr. Maly stated that he had applied for Social Security disability and had also inquired of his pension funds of whether or not he should retire. Mr. Maly stated he had been told that he should wait for Social Security disability prior to applying for any pension benefits. . . .

Doc. No. 34 at ¶25.

After considering Plaintiff's testimony and evidence, the Trustees voted to "deny

Mr. Plaintiff's appeal for retroactive disability benefits based on Section 9.1 of the [SPD]

which states that no benefits will be paid for any period prior to the date that an

application is filed with the Trustees."

On August 18, 2010, Zenith sent a letter to Plaintiff informing him that the

Trustees had denied his appeal based on Section 9.1 of the SPD and Section 8.4 of the

Plan. On November 15, 2010, Plaintiff submitted a request for reconsideration of the

Board of Trustees' August 9, 2010 decision to deny Plaintiff's appeal, stating:

I would like the pension board to reconsider my back pay. Neither my wife or [sic] I remember receiving any type of booklet on the pension plan. . . . I received it a week ago. After reading it I don't know if I would have done my application any differently. What I read in section 7.2[4] states

───────────────

[4]    Section 7.2 of the SPD provides:

**Secttion 7.2  When Does a Participant Qualify for a Disability Pension Benefit?**  A Participant will qualify for the Disability Pension Benefit if the Trustees find on the basis of the written medical opinion that is satisfactory to the Trustees, or based on a Social Security Disability Award, that:

(a) During the two-year period starting with the date that Disability Pension Benefits begin, he has been totally disabled by a physical or mental condition so as to be prevented from engaging in any regular employment or occupation within the electrical construction and maintenance trade for at least a five-(5) month period.

6

to qualify for pension I must either be approved by the trustees on a medical exam or by Social Security disability award which I was granted in 2009. . . . I did not consider myself disabled until 2009 when a judge ruled it as such, and the ruling was retroactive to 2004 when I last worked. . . . If my memory serves me correctly I called all pension plans and was told first I had to receive a Social Security award before applying. I do not see any time frame that limits this. . . . I had no idea that you could be declared disabled from the trade but not from Social Security.

Doc. No. 34 at ¶27.

The Trustees directed Zenith to send Plaintiff a letter explaining that the Trustees had already ruled on his appeal and that approving his request for a second appeal would be contrary to Plan language. Zenith sent that letter to Plaintiff on January 12, 2011.

## Applicable Law

### Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine dispute as to any material fact exists and the movant is entitled to judgment as a matter of law." *Fu v. Owens*, 622 F.3d 880, 882 (8th Cir. 2010). The burden of demonstrating the absence of any genuine issue of material fact rests on the movant. *Wingate v. Gage Cnty. Sch. Dist.*, *No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008). Nevertheless, a nonmovant may not rest upon mere denials or allegations, but must instead designate the specific facts sufficient to raise a genuine issue for trial. *See Crossley v. Georgia–Pacific Corp.*, 355 F.3d 1112,

---

(b) Thereafter, he has been totally disabled by a physical or mental condition so as to be prevented from engaging in any regular employment or occupation. . . .

1113 (8th Cir. 2004). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Self-serving, conclusory statements, without more, are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). Moreover, the requirement, on a motion for summary judgment, that facts must be viewed in the light most favorable to the nonmoving party applies only if there is a genuine dispute as to those facts. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (internal quotation marks and citation omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)). Finally, in ruling on a motion for summary judgment, a court may not invade the province of the jury. "Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.*

In this case, both parties move for summary judgment. Although they disagree on the interpretation of certain facts, neither party contends that there are factual issues precluding the entry of summary judgment. The parties seek instead a determination of the legal issues relating to the appropriate standard of review for, and the validity of, the Trustees' decision. The Court agrees that there are no material facts in dispute and proceeds to a consideration of the legal issues presented.

## Standard of Review

Under ERISA, a plan beneficiary may bring a civil action to obtain judicial review of a benefits determination. 29 U.S.C. § 1132(a)(1)(B). Where the language of an

ERISA plan grants the plan administrator discretionary authority to construe ambiguous terms or make eligibility determinations, the administrator's decisions are reviewed for an abuse of discretion. *Govrik v. Unum Life Ins. Co. of America,* 702 F.3d 1103, 1108 (8th Cir. 2013) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). "If there has been a valid grant of discretionary authority, the administrator's . . . decision is reviewed for abuse of discretion." *Siegel v. Connecticut General Life Ins. Co.*, 702 F.3d 1044, 1048 (8th Cir. 2013).

"This highly deferential standard reflects the fact that courts are hesitant to interfere with the administration of [an ERISA] plan." *Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (internal quotation omitted). Under an abuse of discretion standard, the administrator's decision "will not be disturbed if reasonable." *Bruch*, 489 U.S. at 111. The Court "measure[s] reasonableness by whether substantial evidence exists to support the decision, meaning more than a scintilla but less than a preponderance" of the evidence. *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir. 2008) (internal quotation omitted).

Where there is no grant of discretion, the determination is reviewed *de novo*. *Siegel,* 702 F.3d at 1048.

## Discussion

### The Applicable Standard of Review

Plaintiff asserts that the Court should conduct *de novo* review of the Trustees' decision because no language in the Plan gives the Trustees discretionary authority to make benefit decisions. Relying on *Jobe v. Medical Life Ins. Co.,* 598 F.3d 478 (8th Cir.

2010), Plaintiff further asserts that only a grant of discretionary authority found in the Plan, as opposed to the Trust or the SPD, will be deemed a valid grant of discretion. Because the grants of discretionary authority here are found in the Trust and the SPD, Plaintiff asserts that the Court must undertake *de novo* review.

In support of their motion for summary judgment, Defendants assert that the Court should review the Trustees' decision for abuse of discretion, because the Trust and the SPD delegate discretionary authority to the Trustees. They point out that Section 6.06 of the Trust gives the Trustees discretion to construe the terms and meaning of the Plan, the SPD, and the Trust, and that Section 9.06 (h) of the Trust expressly grants the Trustees "the discretionary authority to decide . . . appeal[s] and, in matters pertaining to . . . appeal[s], to exercise the [discretionary] authority to interpret Plan documents."[5]

---

[5]          Section 6.06 - Interpretation. The Trustees shall have the *discretionary authority* to construe this Trust Agreement, regulations, the Pension Plan, the Summary Plan Description, forms used by the Trust Fund, motions and other parts of the minutes of Trustee meetings, and all other documents and written materials used by or applicable to the Trust Fund. The Trustees' interpretation shall be binding on the parties hereto . . . and all other persons unless it is arbitrary or unreasonable. (emphasis supplied).

         Section 9.06 - Appeal Procedure.
            * * *

     (h) Discretionary Authority. The Board of Trustees and any person or persons designated by the Trustees to decide the appeal shall have *discretionary authority* to decide the appeal and, in matters pertaining to the appeal, to exercise the authority to interpret Plan documents granted to the Trustees under Section 6.06. (emphasis supplied).

In addition to these Trust provisions, Defendants note that the SPD and the Plan each contain provisions which clarify the relative significance of the Plan Documents with respect to the Trustees' discretionary authority. For example, Section 1.11 of the SPD provides that questions concerning the Plan are to be resolved by reference to "other plan documents" and states that "matters that are not clear" are to be referred to the Trustees. In addition, Section 9.12 of the SPD provides that the Trustees "have the authority to use their discretion to rule on all applications and appeals. . . and Benefits and eligibility are to be in such form, and such amounts, and subject to such limitations and conditions as the Trustees decide upon." Further, the primacy of the Trust over other Plan Documents is expressed in Section 9.1 of the Plan which provides that "the Plan may be amended at any time in accordance with the Trust Agreement."

Upon consideration of these arguments, the Court first concludes that *Jobe* does not support Plaintiff's contention that a grant of discretion must be found in the Plan and not in the Trust. *Jobe*, 598 F.3d at 484. In *Jobe*, the Eighth Circuit held that "a grant of discretion to the plan administrator, appearing only in a summary plan description, does not vest the administrator with discretion where the policy provides a mechanism for amendment and disclaims the power of the summary plan description to alter the plan." *Id.* (citations omitted). However, in *Jobe* the Eighth Circuit also went on to state that, a court may look beyond the Plan to determine the presence, if any, of discretionary authority. *Id.* at 485. Here the grant of discretion appears both in the SPD and the Trust.

In addition, before its ruling in *Jobe* the Eighth Circuit upheld grants of discretion found in a trust agreements as valid delegations of such authority. *See, e.g., Collins v.*

11

*Central States, Southeast and Southwest Areas Health and Welfare Fund*, 18 F.3d 556,

559 (8th Cir. 1994) (upholding application of abuse of discretion standard where the trust

agreement gave trustees discretion to deny benefits to individual determined ineligible

under the plan document); *Oldenburger v. Central States S.E. & S.W. Areas Teamster*

*Pension Fu*nd, 934 F.2d 171, 173-74 (8th Cir. 1991) (upholding application of abuse of

discretion standard where trust conferred discretion on trustees to construe and apply the

plan eligibility requirements and made the trustees' determinations binding).

Considering the language in the Plan Documents in light of Eighth Circuit precedent, the

Court concludes that in cases of conflict or ambiguity in the Plan Documents, the

language of the Trust controls. *See Jobe,* 598 F.3d at 485. Therefore, although the Plan

includes no grant of discretionary authority, Sections 6.06 and 9.06 of the Trust explicitly

confer the Trustees with discretion to interpret the Plan for purposes of making benefit

determinations. *See id*. Accordingly, because the Trust confers discretionary authority

on the Trustees, the Court will review their determination under the abuse of discretion

standard. *See Siegel*, 702 F.3d at 1048 (quoting *Carrow v. Standard Ins. Co.,* 664 F.3d

1254, 1258–59 (8th Cir. 2012).

### The Reasonableness of the Trustees' Decision

Under the abuse of discretion standard, this Court properly defers to an

administrator's interpretation of the plan "so long as it is reasonable, even if the [C]ourt

would interpret the language differently as an original matter." *Khoury*, 615 F.3d at 954

(internal quotation omitted). In other words, the plan administrator's decision should be

affirmed "if a reasonable person *could* have reached a similar decision, given the

evidence before him, not that a reasonable person *would* have reached that decision."
*Green v. Union Sec. Ins. Co.* 646 F.3d 1042, 1050 (8th Cir. 2011) (emphasis in the
original).

In *Finley v. Special Agents Mut. Ben. Ass'n, Inc.*, 957 F.2d 617, 621 (8th
Cir.1992), the Eighth Circuit identified several factors to be considered in reviewing the
decision of a plan administrator for abuse of discretion.  Specifically, this Court is
directed to consider "whether the plan administrator's interpretation  (1) is consistent
with the plan's goals; (2) renders any of the plan language meaningless or internally
inconsistent; (3) conflicts with the substantive or procedural requirements of ERISA; (4)
has been followed similarly in the past; and (5) is contrary to the clear language of the
policy."  *Khoury*, 615 F.3d at 954 (citing *Finley*, 957 F.2d at 621).

These factors inform the analysis, but "'[t]he dispositive principle remains . . . that
where plan fiduciaries have offered a reasonable interpretation of disputed provisions,
courts may not replace [it] with an interpretation of their own–and therefore cannot
disturb as an abuse of discretion the challenged benefits determination.'"  *King v.
Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (quoting *de Nobel v.
Vitro Corp.*, 885 F.2d 1180, 1188 (8th Cir. 1989) (alteration in original) (internal
quotation omitted)).

In determining whether the plan administrator abused its discretion, the Court also
must consider the inherent conflict of interest that arguably arises when a plan
administrator acts as both the payer of benefits and the decision-maker in a claim
determination.  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008).  This conflict of

interest does not change the standard of review, but instead should be weighed as a factor in determining whether the administrator abused its discretion. *Id.* at 115. "A conflict of interest will be given greater weight 'where circumstances suggest a higher likelihood that it affected the benefits decision.'" *Govrik*, 702 F.3d at 1109 (quoting *Glenn*, 554 U.S. at 117).

With respect to the *Finley* factors, Plaintiff asserts that the Trustees' decision to deny him retroactive benefits was arbitrary and capricious, because it is inconsistent with the purpose and plain language of the Plan Documents. Plaintiff characterizes the requirement under Section 8 of the Plan and Section 9.1 of the SPD that an application be filed and approved by the Trustees as procedural rather than substantive. He contends that the filing of an application triggers the payment of benefits for the entire period of eligibility for benefits as defined in the Plan. Plaintiff also asserts that the decision conflicts with ERISA provisions and regulations prohibiting forfeiture of vested benefits.

Defendants contend that the Trustees' decision is neither arbitrary nor capricious and is supported by substantial evidence on the record as a whole. They assert that the decision is consistent with the purpose and plain language of the Plan Documents, and historical applications of the Plan. In addition, they contend that the decision is not inconsistent with the requirements of ERISA.

1. The Purpose of the Pension Plan

Section 0.02 of the Trust provides that the general purpose of the Pension Plan is "to provide pension and related benefits . . . subject to conditions of eligibility as set forth in the [Plan]. Section 3.01 of the Trust provides that the "Pension Plan . . . may provide

14

for . . . disability, and related benefits for employees . . . subject to such eligibility, vesting and other conditions and requirements as set forth in the Pension Plan." The language of these provisions indicates that Defendants' interpretation is consistent with the Pension Plan's purpose to provide benefits, subject to "conditions of eligibility" such as the condition set forth in Section 8.4 of the Plan and Section 9.1 of the SPD that benefits will not be paid for any period preceding the date on which an application is filed. Trust, Section 0.02.

2. The Plain Language of the Pension Plan Documents

Section 5.3(b) of the Plan defines "Total Disability" as "a physical or mental condition of an Employee which the Trustees find on *the basis of medical evidence or . . . a Social Security Certificate of Award for Disability Benefits* to totally prevent the Employee from engaging in any regular . . . employment within the . . . trade for a period of at least five months." Section 5.3(c) of the Plan entitled, "When Paid," describes the five-month waiting period for disability benefits and states that "[a]n Employee who meets the eligibility conditions for total Disability Benefits as set forth [in Section 5.3(b)], upon approval by the Trustees of an application submitted to the Trustees, shall become entitled to total Disability Benefits as of the first day of the sixth month following the date that the Employee's disability began." "This five-month waiting period is intended to coordinate with the sickness and accident benefits provided by the Local 309 Electrical Health and Welfare Fund." *Id.*

In addition, Section 8.4 of the Plan entitled "Commencement of Benefits," provides that: "[a]n application for a disability pension benefit should be filed with the

Trustees as soon as it appears that the disability will be total and permanent.  No benefits will be paid for any period prior to the date that an application is filed with the Trustees."

Similarly, Section 8 of the SPD provides in pertinent part:

**Section 8.1.  How May Benefits Be Lost or Reduced?**
> \* \* \*
> (c) **Failure to Make Timely Application:** If you or your beneficiaries fail to make applications for any benefit due, the benefits will not be paid.  In any event, if you fail to make timely application, *the benefits are not paid retroactively for period prior to the time that an application is filed.* (italics added).

Finally, Section 9.1 of the SPD, entitled "How Do I Apply for Benefits?" states: "[y]ou must file an application with the Plan office.  The Board of Trustees may for good cause excuse an untimely application, but in no event will a pension be payable for any period preceding the date of filing the application for retirement (except as required by IRS regulations)."

The parties draw different conclusions from the language of these provisions and disagree in particular about the effect of Section 8.4 of the Plan and Sections 8 and 9.1 of the SPD, which they call collectively, "the Application Rule."

Plaintiff asserts that the "Application Rule" is procedural and does not affect his eligibility for, or substantive right to, benefits accrued prior to the date of the application. Noting the use of the words, "shall become entitled," in Section 5.3, Plaintiff contends that this provision sets forth the substantive eligibility rules for disability pension benefits and argues that the Application Rule does not alter this substantive claim.  Relying on

*Canseco v. Const. Laborers Pension Trust for S. California,* 93 F.3d 600, 606-08 (9th Cir. 1996), Plaintiff further contends that because the Application Rule does not appear in Section 5.3 it cannot operate to bar the retroactive payment of disability pension benefits. In addition, Plaintiff argues that the Application Rule makes sense in the context of retirement pension benefits but not in the context of disability benefits.

Defendants assert that the Application Rule is not merely procedural, but substantive. They argue that the Application Rule is an additional restriction on the receipt of disability benefits consistently set forth in all Plan Documents, and that the failure to place it in Section 5.3, accompanying the definition of "Total Disability," does not alter this conclusion. They further point out that the Application Rule is consistent with the disability benefit waiting period and the overall design of the disability benefit portion of the Plan to coordinate the provision of workers' compensation and other short term disability benefits with disability pension benefits so as to avoid duplicative payments.

Having considered these arguments, the Court first concludes that Plaintiff's reliance on *Canseco* is misplaced. In *Canseco,* the Ninth Circuit rejected as arbitrary and capricious a plan administrator's decision to deny retroactive benefits. *Canseco,* 93 F.3d at 608. The appellate court concluded that an application requirement in the plan at issue was procedural, rather than a substantive eligibility requirement and held that a decision denying retroactive retirement benefits was inconsistent with the terms of the plan. *Id.* at 607. The appellate court premised its determination, in part, upon the structure of the benefit plan, a structure similar to that in the Plan Documents now before the Court. *Id.*

However, an equally, if not more persuasive, basis for its determination was the fact that "[n]owhere does the [plan] provide that an employee's failure to submit an application for benefits will result in the retroactive loss of benefits for which that employee is eligible." *Id*. Thus, because the Plan Documents expressly permit the retroactive loss of benefits *Canseco* is readily distinguishable from the present case.

The most significant flaw in Plaintiff's argument is that the language of the Plan Documents explicitly prohibits the retroactive payment of benefits. Plaintiff's characterization of the Application Rule as procedural is inconsistent with the plain meaning of Sections 8.4 of the Plan and 9.1 of the SPD. The only reasonable interpretation of the Application Rule is that it explicitly requires not only the filing of an application, but also prohibits payment of benefits for the period prior to the filing of such application. Having considered the parties' arguments, the plain language of the Plan Documents and the entire Pension Plan benefit scheme, the Court is satisfied that Trustees' decision to deny retroactive benefits is consistent with the plain meaning of the Plan documents, as well as the purpose and consistent administration of the Pension Plan. *Davolt v. Exec. Comm. of O'Reilly Auto.*, 206 F.3d 806, 810 (8th Cir. 2000) (reversing district court's misinterpretation of plan terms because "[a]ny other interpretation would be at variance with the [P]lan's plain language.").

3. Consistency with Other Provisions of the Plan Documents

The Court also is satisfied that Defendants' interpretation takes into account all provisions of the Plan Documents and does not conflict with or render any of their terms meaningless. *See King*, 414 F.3d at 999 (internal quotation omitted). By contrast,

Plaintiff's interpretation ignores the plain language of the provision explicitly prohibiting the payment of benefits for a period prior to the filing of an application.

### 4. Consistency with the Requirements of the ERISA Anti-cutback Rule

Plaintiff also asserts that the Trustees abused their discretion by disregarding the requirements of the ERISA "anti-cutback rule" set forth at §204(g) of ERISA, 29 U.S.C. §1054(g). The "anti-cutback rule" generally provides that "the accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." *Hunger v. AB*, 12 F.3d 118, 119-120 (8th Cir. 1993). Plaintiff contends that his disability pension benefit was an "accrued benefit" not subject to forfeiture and that therefore, under the anti-cutback rule, he may not be denied retroactive payment of the disability pension benefit.

Section 1054(g) is ERISA's so-called "anti-cutback" provision. It states that subject to certain exceptions, "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g)(1). The purpose of the anti-cutback rule is to prevent retirement plans from being amended to reduce or eliminate . . . a participant's accrued [retirement] benefit through amendment of the plan." *Hunger*, 12 F.3d at 119 (explaining that under § 1054(g) (1), ERISA prohibits a plan sponsor from decreasing benefit subsidy through plan amendment when participant has satisfied pre-amendment requirements for subsidy or would otherwise be able to satisfy such requirements after the amendment).

In failing to apply ERISA's anti-cutback rule, the Trustees did not abuse their discretion because the anti-cutback rule is not applicable here. *See* 29 U.S.C.A. §§

1002(1), (2)(A), 1051(1), 1054(g)(1).  First, the rule does not apply because there is no plan amendment at issue, and under the terms of the Pension Plan, Plaintiff was never eligible to receive benefits for the period prior to the date of application.  *Id.* at § 1054(g)(1); *Hunger* 12 F.3d at 120.  Second, although the Eighth Circuit has not addressed the question, other appellate courts have held that disability benefits provided by a pension plan are not subject to the anti-cutback rule because they are deemed "welfare," rather than pension benefits, within the meaning of ERISA.[6]  29 U.S.C. § 1051(1); *see, e.g., Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trs.*, 588 F.3d 641, 651 (9th Cir. 2009) (stating that disability benefits constitute employee welfare benefit plans that ERISA permits employers to cut and citing similar holdings from the Second, Sixth, and Eleventh Circuits); *see also Shore v. Int'l Painters and Allied Trades Industry Pension Plan*, 418 Fed. App'x 597, 599 (9th Cir. 2011) (same).

5.  Consistency with Prior Plan Administration

The record is largely silent with respect to the Trustees' prior determinations regarding requests for retroactive disability benefits.  Defendants assert, but without

---

[6]     Under ERISA and the Internal Revenue Code, the anti-cutback rule applies to "employee pension benefit plans," but does not apply to "welfare benefit plans," which are defined as:

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing . . . benefits in the event of sickness, accident, disability, death or unemployment. . . .

29 U.S.C. § 1002(1); § 1051(1).

supporting evidence, that their decision here is consistent with prior practice. Plaintiff

contends that they failed to demonstrate such consistency at the appeals hearing. The

Court finds neither authority for the contention that Defendants are required affirmatively

to demonstrate the consistency of this decision, nor evidence in the record suggesting that

the present decision is inconsistent with prior practice. For this reason, the Court

concludes that consideration of this *Finley* factor does not indicate that Defendants'

decision here was unreasonable.

6. <u>Conflict of Interest</u>

Plaintiff also contends that because Trustees operated under an inherent conflict of

interest they abused their discretion in denying his claim for retroactive payment of

disability benefits. Defendants assert that they did not operate under such a conflict

because the Board is structured with representative of employers and the union to

mitigate any such conflict.

Where, as here, the plan administrator is the board of trustees of a multi-employer

pension plan consisting of representatives of both the employers and the union and the

trustees have no personal economic interest in deciding claims, courts have held that no

structural conflict of interest exists. *See, e.g., Klein v. Cent. States, Se. & Sw. Areas

Health & Welfare Plan*, 346 F. App'x 1, 5 (6th Cir. 2009) (finding no conflict for a

"multi-employer benefit plan without a profit motive, and [where] individual trustees

receive no personal financial benefit from approving or denying claims."); *Anderson*, 588

F.3d at 651 (finding no conflict because the "various participating employers – not the

Trustees – fund the Plan [and][t]he Trustees have no personal economic interest in the decision to grant or deny benefits").

Courts which have found that a structural conflict of interest exists within a multiemployer plan's board of trustees generally hold that the conflict is only one factor to be taken into account. *See Govrik*, 702 F.3d at 1109. Where the record does not indicate that the administrator's decision was affected by the inherent conflict of interest that conflict is afforded less weight. *Id.* (explaining that "[a] conflict of interest will be given greater weight where circumstances suggest a higher likelihood that it affected the benefits decision") (internal quotation omitted); *see also Lee v. Sheet Metal Workers' Nat'l Pension Fund*, 760 F. Supp. 2d 711, 719 (E.D. Mich. 2010) (stating that where the administrative record did not "suggest improper motivation on the part of Trustees in denying the plaintiff's claim. . . the alleged structural conflict does not deserve much weight."); *Griffin v. New York State Nurses Ass'n Pension Plan & Benefits Fund*, 757 F. Supp. 2d 199, 211 (E.D.N.Y. 2010) (discounting asserted conflict of interest because "Plaintiff has adduced no evidence showing that the conflict of interest affected the reasonableness of the Trustees' determination.").

Assuming without deciding that the Trustees operated under an inherent conflict of interest, the Court nonetheless concludes that this factor is insufficient to render their decision arbitrary or capricious. Plaintiff has not identified, nor has the Court found evidence in the Administrative Record indicating that the alleged conflict of interest affected the reasonableness of the decision or that the Trustees acted with an improper motive in denying Plaintiff's claim for retroactive disability benefits. *See Green*, 646

F.3d at 1053 (finding no evidence insurance company's conflict of interest influenced its denial of benefits when there was no indication company had history of biased claim decisions).

7. <u>Lack of Access to Plan Documents</u>

Plaintiff claims that he did not have a copy of the Plan Documents when he filed his application and did not receive them until after he filed his appeal. He further asserts that he relied to his detriment upon the representations of Defendants' agents in delaying the filing of his application until August 2009. Defendants contend that all employees received the SPD and that they provided Plaintiff with copies of all appeal procedures in their correspondence with him. They further contend that even if, as Plaintiff asserts, he did not have the SPD or other Plan Documents, he was not prejudiced as a result.

The Administrative Record indicates that Plaintiff did not request copies of the Plan or Trust until after the Trustees had decided his appeal, and that Defendants timely supplied these documents when Plaintiff requested them. Section 1.14 of the SPD indicates that copies of Plan Documents are kept at work sites and union halls where they are to be available for examination by employees. In addition, employees are advised that they may make a written request to obtain the Plan Documents. The record is devoid of evidence that the documents were not available to Plaintiff at the specified locations, or that Plaintiff requested but never received any Plan Documents.

Accepting Plaintiff's lack of sophistication and familiarity with the Plan Documents, the Court nevertheless concludes that he was not diligent in obtaining the information necessary to assure timely filing of his application. The record reflects that

he was assisted by an attorney during the SSA process. Moreover, it was only after the Trustees' decision on his appeal, that Plaintiff claimed that he had not received the SPD when it was distributed to employees. Finally, after receiving a copy of, and reviewing the SPD, Plaintiff stated in his letter to the Trustees that even if he had received it prior to the appeal "I don't know if I would have done my application any differently." (Doc. No. 21-2.)

For these reasons, the Court cannot say that Defendants' decision was arbitrary because Plaintiff did not have copies of the Plan Documents prior to filing his application or appeal. The record clearly indicates that Plaintiff either possessed or could have obtained access to all relevant documents at any time after his initial injury. Although his decision to defer the filing of his application until after the SSA ruling may have been influenced by statements made by the union agent and Zenith, it was incumbent upon Plaintiff to determine the requirements applicable to his claim for pension disability benefits.

8. <u>Absence of Prejudice to Defendants</u>

Finally, Plaintiff asserts that state law notice and prejudice principles applicable to ERISA determinations render the Trustees' decision unreasonable. Specifically, Plaintiff asserts that Defendants were not prejudiced by his delay in filing the application until after the SSA determination and that he should be receive retroactive to his Social Security disability date. Similarly he asserts that his SSA disability petition should be deemed a *de facto* application under the Pension Plan.

Under Illinois law, which the parties agree applies to the interpretation of the Plan Documents for purposes of a notice and prejudice determination,

> "[t]he following factors may be considered in determining whether notice to an insurer has been given within a reasonable time: (1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer."

*West American Ins. Co. v. Yorkville Nat'l Bank*, 939 N.E.2d 288, 293-294 (2010).

In addition, under the abuse of discretion standard whether a benefit plan was prejudiced by late notice is a relevant, but not a determinative factor in assessing reasonableness. *Farmers Auto. Ins. Ass'n v. Burton*, 967 N.E.2d 329, 334 (Ill. App. Ct. 2012).

On the record before it, the Court is satisfied that three of the five factors set forth above clearly weigh in favor of a determination that Defendants' decision to deny retroactive benefits contravenes notice and prejudice principles. With respect to Plaintiff's lack of sophistication, if, as noted above, he had been diligent in obtaining the necessary documents and the requirements for receipt of disability pension benefits he could have filed a timely application. With respect to the question of prejudice, assuming without deciding that Defendants were not prejudiced by the untimely application, a mere lack of prejudice to Defendants, without more, is insufficient to render Defendants' decision to deny benefits arbitrary or unreasonable.

Having reviewed the Trustees' decision under an abuse of discretion standard, the Court concludes for the reasons set forth above, that Defendants' decision is reasonable and supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **DENIED**.  (Doc. No. 29.)

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED**.  (Doc. No. 32.)

A separate judgment shall accompany this Memorandum and Order.


  */Audrey G.Fleissig   /*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of March, 2013.